UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG WILLIAMS, | Civil Action No. 2:15-cv-08795 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | April 24, 2017 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Craig Williams' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Elias Feuer's ("ALJ Feuer") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Feuer's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

I.   **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

On April 13, 2012, Plaintiff applied for DIB and SSI, alleging disability as of July 1, 2009 and thereafter amended his onset date to March 29, 2012.[1] (Pl. Br. at 1.) Plaintiff's application was denied both initially and upon reconsideration. (R. 153–58, 170–72.) Plaintiff's subsequent request for a hearing before an administrative law judge was granted (R. 185–89), and a hearing was held before ALJ Feuer on April 22, 2014. (R. 53–118.) Plaintiff, as well as a vocational expert, appeared and testified at the hearing. (*Id.*) On July 10, 2014, ALJ Feuer issued a decision finding Plaintiff was not disabled and denying his application for DIB and SSI. (R. 34–47.) On October 23, 2015, the Appeals Council denied Plaintiff's request for review of ALJ Feuer's July 10, 2014 decision, making it the Commissioner's final decision. (R. 1–4.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand this matter for an award of benefits or, in the alternative, for further administrative proceedings. (Pl. Br. at 31–32.)

   B. **Factual History**

   *1. Personal and Employment History*

Plaintiff was born on December 3, 1961 and was 50 years old at the time of the hearing before ALJ Feuer. (R. 45, Pl. Br. at 3.) He completed the 12th grade and was previously employed as a warehouse worker, cook, aide to a supervisor, landscaper, and car sander. (R. 61–66.) Plaintiff alleges that he became disabled due to sleep apnea and high blood pressure. (R. 119.)

---

[1]   Plaintiff's application was based on alleged sleep apnea and high blood pressure. However, this Court notes that the record and ALJ Feuer's opinion focus extensively on plaintiff's complaints of back pain and obesity. This Court will therefore include that portion of the record in its review.

*2. Medical History*

The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to his disability claim. (R. 425-574.) In addition, Plaintiff testified about his health before ALJ Feuer. (R. 78–98.) The following is a summary of the medical evidence:

On March 29, 2012, Plaintiff saw Kim C. Dixon, M.D. ("Dr. Dixon") after visiting the emergency room for chest discomfort. (R. 349.) Dr. Dixon diagnosed him with obstructive sleep apnea. (R. 350.) Plaintiff underwent a sleep study on April 25, 2015, which confirmed he suffered from severe sleep apnea, and Plaintiff was placed on a CPAP machine. (R. 331-32, 358-400.)

Plaintiff was involved in a motor vehicle accident on May 19, 2012. (R. 425.) On May 22, 2012, he saw Frank G. Belverio ("Dr. Belverio") for injuries to his neck and back. (R. 421.) Plaintiff had mildly decreased lumbar lordotic curvature and narrowing of the disc space between L5 and S1. (R. 421.) There was also severely decreased loss of normal curvature in the cervical spine, and diminished disc spaces between C4-C5 and C5-C6. (R. 421.) Plaintiff subsequently engaged in chiropractic treatment. (R. 409-21.) On July 24, 2012, he underwent an MRI of the lumbar spine, which showed probable cervical spasm, disc herniation at L5-S1 with impingement of the nerve roots, and minimal bulging of the L4-L5 disc without focal disc herniation or stenosis. (R. 423.) Imaging of the cervical spine showed central herniations of the nucleus pulposus at C4-C5, C5-C6, and C6-C7 with probable nerve root impingement. (R. 424.) Dr. Belverio opined that Plaintiff could not work and would be incapacitated for more than 90 days, but less than six months. (R. 561.)

On August 8, 2012, Plaintiff consulted with Jerald P. Vizzone, D.O., ("Dr. Vizzone"), an orthopedic surgeon, where he complained of continued neck and low back pain with radiation to the left upper and left lower extremities. (R. 406.) Dr. Vizzone noted Plaintiff was able to walk

3

without difficulty on straight away, heel walk, and toe walk. (R. 406.) Plaintiff's cervical spine revealed palpable paravertebral muscle spasm; his lower extremity strength was full, and he was positive for straight leg raises bilaterally. (R. 405.)

Plaintiff also met with Amit Poonia, M.D. ("Dr. Poonia"), a pain management specialist, on August 8th for an initial evaluation. (R. 464.) Dr. Poonia found diminished range of motion in Plaintiff's left arm and limited range of motion in the cervical and lumbar spine secondary to pain, as well as mild muscle spasms throughout. (R. 425-69.) Plaintiff was positive for lumbar facet loading and straight leg raises. (R. 426.) He also exhibited diminished sensation in several dermatomes in the left. (*Id*.)

On August 22, 2012, Plaintiff underwent x-rays of the spine. (R. 405.) His cervical spine showed reversal of the normal cervical lordosis and decreased disk space at C4-C5. (*Id*.) X-rays of his lumbar spine were unremarkable. (*Id*.) Plaintiff also saw Dr. Poonia that day for pain management, where Plaintiff opted to begin a series of epidural steroid injections to the lumbar spine. (R. 462.)

Plaintiff began transforaminal epidural steroid injections on September 5, 2012. (R. 453.) During a physical examination on September 12, 2012, Dr. Poonia found decreased range of motion in Plaintiff's lower extremities, lumbar spine, tender paraspinal musculature bilaterally. (R. 445-46.) Plaintiff showed mild muscle spasms. (R. 445.) Facet loading testing was positive bilaterally. (*Id*.) On September 19, 2012, Plaintiff reported 50% transient pain relief for 4 to 5 days after his steroid injection, an increase in functionality, and increased range of motion. (R. 486.)

On October 10, 2012, an electro-diagnostic study showed evidence of sub-acute left C4-5 and C5-6 radiculopathy, but no evidence of lumbar radiculopathy. (R. 434.) During a follow-up

appointment with Dr. Poonia that same day, Plaintiff displayed diminished range of motion and tenderness to palpation in the lumbar spine. (R. 445.) He was positive for straight leg raises and his sensation was reduced in the L4 and L5 dermatones. (R. 446.)

On October 19, 2012, Plaintiff was evaluated for acupuncture. (R. 544.) He visited Jinghui Xie, M.D., where he complained of neck and low back pain. (R. 425.) On examination, Plaintiff had decreased range of motion in his lumbar spine, tenderness, and muscle spasms. (R. 426.) On November 14, 2012, Plaintiff had his third right lumbar transforaminal epidural steroid injection. (R. 532.) Plaintiff followed up with his pain management specialist in November and December, where he complained of cervical pain. (R. 473.) Physical examination was positive for Spurling test and Lhermitte test on the left, sensory deficit, and slightly decreased motor strength in the left upper extremity. (R. 474.)

The next treatment record is dated March 2014, at which time Plaintiff was examined by David J. Greifinger, M.D. ("Dr. Greifinger"), an orthopedic surgeon. (R. 550.) There, he complained of ongoing neck and low back pain. (R. 552.) On examination, Plaintiff exhibited pain behaviors with cervical movement. (*Id.*) However, his range of motion was full in all planes, he was nontender at the paravertebrals, and his lordotic curve was satisfactory. (*Id.*) He displayed weakness in the upper extremities bilaterally but denied any paresthesias. (*Id.*) His reflexes were grossly intact. (*Id.*) His straight leg raising test was negative bilaterally and his deep tendon reflexes were full and equal. (*Id.*) Plaintiff was subsequently scheduled for another series of epidural steroid injections. (R. 554.)

On April 2, 2014, Jeffrey Massorone, D.C., completed an Examination Report of the State of New Jersey, Division of Family Development, in which he opined that Plaintiff could not work from April 2, 2014 through April, 2, 2015. (R. 574.)

5

### *3. Function Report*

Plaintiff submitted a self-function report dated October 23, 2012, in support of his DIB and SSI claim. (R. 296.) Plaintiff stated that his daily activities consist of going to therapy, taking a nap, walking to the deli to get a meal, and taking another nap or reading a book. (R. 296.) He also has an eleven-year-old daughter who he sees two or three times a week. (R. 297.) Furthermore, Plaintiff reported that he has difficulty getting dressed and bathing because he has difficulty maintaining balance. (R. 297.) He self-reported that he gets along "very well" with authority figures and that he is good at handling change, but he tries to stick to a routine. (R. 302.)

### *4. Hearing Testimony*

At the hearing before ALJ Feuer on April 22, 2014, Plaintiff testified about his previous employment, daily activities, debilitating conditions, and treatment. (*See* R. 78–98.) He discussed his sleep apnea, hearing problems, and pain he suffers from his car accident. (*Id.*) Vocational Expert Victor G. Alberigi ("Alberigi") also testified at the hearing and first stated that someone with Plaintiff's limitations would be able to perform his "past relevant work" as a forklift operator, deli slicer and short-order cook. (R. 103.) In addition, Alberigi testified that there existed representative jobs in the national economy that a person such as Plaintiff could perform. (R. 45.)

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal

7

quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as

work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ

9

proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

ALJ Feuer applied the Five-Step Disability Test to the facts comprising Plaintiff's application for DIB and SSI and determined that Plaintiff was not disabled under the relevant

10

portions of the Social Security Act. (*See* R. 37–47.) Specifically, ALJ Feuer determined that: Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," Plaintiff "is capable of performing past relevant work as short order clerk," and "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 40, 44–45) (citations omitted). These factual findings are supported by substantial credible evidence in the record. Therefore, this Court affirms ALJ Feuer's denial of SSI.

At step one of the disability analysis, ALJ Feuer properly found that Plaintiff had not engaged in SGA since March 29, 2012, the alleged onset date of Plaintiff's disability. (R. 39); *see* 20 C.F.R. §§ 416.971 *et seq*. He accordingly proceeded to step two to determine what, if any, severe impairments Plaintiff suffered. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

At step two, ALJ Feuer properly considered the entire medical record and found that Plaintiff suffered from the following severe impairments: "cervical and lumbar degenerative disc disease, and obesity." (R. 39); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). ALJ Feuer found that these severe impairments "cause significant limitations in [Plaintiff's] ability to perform basic work-related activities, in combination if not singly." (R. 39.) However, he did not find that Plaintiff's alleged hypertension, sleep apnea, and hearing difficulties were "severe." (R. 40.) These findings are supported by substantial evidence in the record. Once ALJ Feuer determined which of Plaintiff's impairments qualified as "severe," he considered, under step three, whether Plaintiff's severe impairments equal or exceed those in the Listing of Impairments in the Act. *See* C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At step three, ALJ Feuer properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R. 40.) Specifically, he properly found that Plaintiff's impairments did not meet or medically equal the criteria of listing 1.04. (*Id.*) In support of his finding, he stated:

> [T]he claimant underwent MRIs of the spine that did not show degenerative changes to the level described by the listing. Moreover, the claimant's gait was unremarkable on examination. The undersigned therefore finds the claimant does not meet or medically equal listing 1.04.

(*Id.*) (citations omitted). Next, ALJ Feuer correctly considered Plaintiff's obesity in the context of the overall record evidence in determining that it did not meet the requisite qualifications of Social Security Ruling 02-1p. (R. 41.)

Before undergoing the analysis in step four, ALJ Feuer determined Plaintiff's RFC. (R. 41-44.) ALJ Feuer properly found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(a) and 416.967(b), meaning the claimant can occasionally lift 20 pounds and frequently lift 10 pounds. (R. 41.) In making this determination, ALJ Feuer considered all of Plaintiff's symptoms to the extent they could be accepted as consistent with the objective medical evidence and all other evidence based on the requirements of 20 C.F.R. 404.1529 and 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p. (*Id.*) ALJ Feuer also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*) In support of his finding, ALJ Feuer cited extensively to Plaintiff's testimony, the treatment and evaluative records of Dr. Vizzone, Dr. Poonia, and Dr. Greifinger and the opinion evidence of the State agency physical medical consultant.[2] (*See* R. 42-43.) He gave little weight to assessments finding Plaintiff not ambulatory as they were inconsistent with

---

[2] ALJ Feuer gave no weight to the statements of Dr. Belvario, as they were conclusive findings of disability and not considered a medical opinion within the meaning of the Social Security Administration regulations. (R. 44.)

12

Plaintiff's abilities at a physical examination. (R. 44.) In light of the substantial evidence he reviewed, this Court finds that ALJ Feuer properly determined Plaintiff's RFC.

After determining Plaintiff's RFC, at step four ALJ Feuer properly found that Plaintiff can perform his past relevant work as a short order clerk under 20 C.F.R. §§ 404.1565, 416.965. (R. 44.) He determined that in comparing Plaintiff's RFC with the physical and mental demands of this work, Plaintiff is capable of actually and generally performing this work. (R. 45.) ALJ Feuer then continued to step five to determine whether there exists work in the national economy that Plaintiff could also perform. *See* C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f), 404.1520(g)(1), 416.920(g)(1).

At step five, ALJ Feuer properly found that Plaintiff can perform work that exists in significant numbers in the national economy. (R. 45); *see* 20 C.F.R. §§404.1569, 416.969, 404.1569(a), 416.969(a). He considered Plaintiff's age, education, work experience and RFC, as well as Alberigi's testimony. (R. 45–46.) Alberigi determined that Plaintiff was capable of satisfying the requirements of the representative occupations of a parking lot cashier, bench/small products assembler I, and electrical accessories assembler I. (R. 45.) Thus, ALJ Feuer's finding that Plaintiff is capable of performing work that exists in significant numbers in the national economy is supported by substantial credible evidence. Accordingly, ALJ Feuer was correct in determining that Plaintiff is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. 47); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416. 920(a)(4)(v).

**CONCLUSION**

Because this Court finds that ALJ Feuer's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's determination is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties